IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VS.                                              CRIMINAL NO. 1:08cr132-WJG-RHW-1
                                                 CIVIL NO. 1:12cv291-WJG

GREGORY BRENT WARR

<u>ORDER</u>

THIS CAUSE comes before the Court on the motions filed by Gregory Brent Warr [Warr] to vacate [148, 149] his conviction pursuant to 28 U.S.C. § 2255. Also pending before the Court is the motion filed by the United States to Dismiss [152] the motions to vacate and to enforce the plea agreement in this case. After due consideration of the record in this cause, the Court finds as follows.

Warr contends that the Federal Emergency Management Agency [FEMA] never determined that he was not eligible to receive the funds he was alleged to have stolen. [148, p. 3.] He claims such a determination would have been critical to his decision to enter a plea of guilty. (*Id*.) He further contends that the Mississippi Development Authority [MDA] determined in similar cases that an applicant was entitled to MDA benefits and such a determination in his case would be a critical factor in his decision whether to enter a plea of guilty. [148, p. 4.] He contends he did not discover this information until 2011. [148, p. 7.]

Warr entered a guilty plea on September 25, 2009, to Count Seven of the second superceding indictment which charged him with a violation of 18 U.S.C. § 641. [82, p. 6.] According to the second superceding indictment, Warr[1] "did steal, purloin, and knowingly convert to their own use greater than $1,000.00 in funds belonging to the United States of America by filing a claim for Federal Emergency Management Agency disaster assistance

---

[1] Warr's wife, Laura Jean Warr, was also charged in this count of the indictment.

benefits and receiving such disaster assistance benefits to which they were not entitled." (*Id.*)

Warr was sentenced to a term of three years probation; restitution in the amount of $9,558.00 payable to FEMA; and a mandatory special assessment of $100.00. [136.] Special conditions of supervision imposed by the Court included a provision that Warr provide the United States Probation Office [USPO] with access to any requested financial information; that he complete one hundred hours of community service work within the first six months of supervision at specific times agreed upon with the approved community service agency and the USPO; that Warr provide verification of that service work to the USPO; and that Warr pay restitution imposed by the Judgment, which was entered in this case on September 25, 2009. [136, p. 3.] No appeal was filed in this case.

Warr asserts that his guilty plea was involuntary and that the resulting conviction should be set aside. [149, p. 2.] Warr contends that the United States failed to reveal material facts prior to the plea in violation of his right to due process under the Fifth Amendment. [149, p. 2.] He claims that he is actually innocent of the crime charged in the second superceding indictment to which he pleaded guilty. [149, p. 3.]

At the time Warr's § 2255 petition was filed on September 21, 2012, Warr was serving the term of probation imposed by the Court. [136; 149, p. 1.] Warr contends that he was "indicted for conduct that was not criminal." [150, p. 1.] He claims that "new evidence" shows that the United States "provided inaccurate information to Warr and to this Court regarding his eligibility for assistance" and "did not disclose . . . evidence that was exculpatory" as required by the Discovery Order and constitutional law. (*Id.*)

Warr states that when offered the "opportunity to secure a dismissal of the case against his wife, Warr agreed to plead guilty." [150, p. 2.] Warr asserts that in late 2011, "Warr became aware of Congressional attention to FEMA payments to Katrina victims." [150, p. 7.] Warr

2

asserts that after researching the issue, he discovered that "Congress expressed concern about the fairness of FEMA collecting overpayments from disaster survivors when the overpayment was the result of FEMA error." (*Id*.) Warr contends that "FEMA never determined that the Warrs were ineligible for the disaster benefits and this information was never disclosed to Warr prior to the plea of guilty. Furthermore, MDA, which also was responsible for executing federal disaster benefits following Katrina, had determined that the Warrs in fact were eligible and the government knew this." (*Id*.)

Warr claims that his motion is timely filed under Federal Rule of Criminal Procedure 33(a). (*Id*.) He claims that the United States was obligated under *Brady*[2] and *Giglio*[3] to provide him with exculpatory and impeachment material as soon as discovered. [150, p. 8.] Warr claims that had he known on September 25, 2009, "that FEMA had not found him ineligible for benefits, he would not have entered a plea of guilty to Count Seven." [150, p. 11.] Warr claims his plea was involuntary. [150, p. 18.]

In the alternative, Warr asserts that he should be granted a new trial. [150, p. 8.] He claims that the United States violated the Due Process clause of the Fifth Amendment in his case. [150, p. 19.] He cites several other cases in which individuals were awarded MDA grants under circumstances similar to his. [150, p. 20.] Warr claims that the plea agreement is "null and void" because the United States did not "live up to its obligation to inform the Court as to 'the nature and extent of Defendant's activities with respect to this case.'" [150, pp. 23, 24.]

Warr claims that he did not procedurally default his actual innocence claim because he was not aware of the information regarding his and others' eligibility determinations prior to filing

---

[2]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[3]*Giglio v. United States*, 405 U.S. 150 (1972).

his *habeas* petition. [150, p. 25.]

The United States asserts that the plea waiver forecloses any claim for relief under 28 U.S.C. § 2255. [154, p. 2.] The claim that the United States withheld information subject to disclosure is not cognizable in the context of a guilty plea, according to the United States. [154, pp. 3-4.] The United States contends that the agreement to waive post-conviction relief contained in Warr's plea agreement is valid. [154, p. 6.] According to the United States, Warr was not denied the benefits of his plea and the United States did not breach the plea agreement. [154, p. 7.]

## Discussion

Warr did not appeal his conviction and such a failure generally results in the waiver of collaterally raised claims. *See, e.g., United States v. Patten,* 40 F.3d 774, 776 (5th Cir. 1994) (*per curiam*), *cert. denied,* 515 U.S. 1132 (1995). After a defendant has exhausted or waived any right to appeal, "we are entitled to presume that [the defendant] stands fairly and finally convicted." *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied,* 502 U.S. 1076 (1992) (quoting *United States v. Frady,* 456 U.S. 152, 165 (1982)). A convicted defendant can only challenge his conviction on issues of constitutional or jurisdictional magnitude after it is presumed final. *Shaid,* 937 F.2d at 232.

I. Timeliness of the Petition

Under 28 U.S.C. § 2255, a petitioner may file a *habeas corpus* petition claiming that a sentence imposed by a federal court "was imposed in violation of the Constitution or the laws of the United States." A petitioner has one year from:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court,

4

if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

If a petitioner fails to file a § 2255 petition within the applicable one-year period, the Court must dismiss the petition as untimely unless "rare and exceptional circumstances" warrant the equitable tolling of this period. *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir.1998).

A prisoner's conviction becomes final generally upon the expiration of direct review or the time for seeking direct review. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). When a federal prisoner fails to file a notice of appeal from his conviction (in other words, when he fails to pursue the direct appeal process), the conviction becomes final for purposes of § 2255 upon the expiration of the 10-day period for filing a direct appeal. *United States v. Plascencia*, 537 F.3d 385, 388-9 (5th Cir. 2008).

Here, the judgment in this case was entered on September 25, 2009. [136.] Because no appeal was taken on the judgment, the conviction became final on October 5, 2009, ten days after the judgment was entered. *Plascencia*, 537 F.3d at 388-9. Accordingly, Warr had until October 5, 2010, to file his petition under § 2255. Because Warr not file his § 2255 motion until nearly two years beyond this date, on September 21, 2012, the motion is untimely. [149.]

Warr claims he was not aware of the circumstances which support his claim that he was wrongly convicted until late 2011. [150, p. 7.] He provides no information regarding why he did not immediately file a motion at the time of his alleged discovery of his innocence. The Court concludes that there are no exceptional circumstances present in this case to justify an equitable tolling of the limitations period for filing a *habeas* petition. The Court, therefore, concludes that Warr's claim is time barred. Out of an abundance of caution, the Court will further consider the

petition as follows.

II. <u>New Trial</u>

Rule 33 of the Federal Rules of Criminal Procedure, which authorizes motions for new trial, applies only to cases in which a trial, either to the court or to a jury, has taken place. Here defendant pleaded guilty; there was no trial. There is no basis to award a new trial in this case, because "the validity of a guilty plea cannot be questioned by way of a motion for new trial." *See United States v. Prince*, 533 F.2d 205, 208 (5th Cir. 1976). The Court concludes that any motion for new trial should be denied.

III. <u>Procedural Default</u>

The Court notes that the Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal," in other words, a defendant cannot forego an appeal in anticipation of filing a § 2255 petition. *Shaid,* 937 F.2d at 231, *citing Frady,* 456 U.S. at 165. Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted. *United States v. Cervantes,* 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231–2; *Frady,* 456 U.S. at 164. As a result, review under § 2255 is ordinarily limited to questions of constitutional or jurisdictional magnitude. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428 (1962).

If a movant challenging his conviction and sentence pursuant to 28 U.S.C. § 2255 could have raised his constitutional or jurisdictional issues on direct appeal, he may not raise them for the first time on collateral review unless he shows cause for his procedural default and actual prejudice resulting from the error or that the constitutional violation has probably resulted in the conviction of one who is actually innocent. *United States v. Bowes,* 139 F.3d 900 (5th Cir. 1998). To satisfy the "cause" standard, a movant must "show that some objective factor external to the

6

defense prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra,* 94 F.3d 989, 993 (5th Cir. 1996). Objective factors that constitute cause include interference by officials that make compliance with the procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion, and ineffective assistance of counsel in the constitutional sense. *Id.* To satisfy the "prejudice" standard, a movant must show that the error he alleges "worked to his actual and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170.

Here, Warr claims he discovered that other individuals allegedly meeting the same criteria as those present in his claim were not prosecuted. Although he asserts that this shows that his actions were not criminal, the Court is not convinced of this argument. *See i.e. United States v. Breland*, 366 Fed.Appx. 548 (5th Cir. 2010).

"Where the basis of a . . . claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Engle v. Isaac,* 456 U.S. 107, 134 (1982). In addition, Warr fails to establish actual innocence. " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley,* 523 U.S. at 623. Warr's "proof" of actual innocence consists of arguments that other individuals were not charged with a crime under similar circumstances to his situation. Nowhere in his papers does Warr assert that he is, as a factual matter, actually innocent of the charges in the second superceding indictment to which he entered a guilty plea. Warr has not established cause for his default or actual innocence, so the Court cannot address his procedurally defaulted claims.

IV. <u>Waiver</u>

As part of the plea bargain agreement with the United States, Warr waived the right to

7

appeal his conviction and to seek post conviction relief in the Plea Agreement. [133, p. 6, SEALED.] The right to appeal a criminal conviction is a statutory right, not constitutional. *Abney v. United States*, 431 U.S. 651, 656 (1977). Plea bargain agreements are "contractual in nature and are to be construed accordingly." *United States v. Moulder*, 141 F.3d 568, 571 (5th Cir. 1998). Statutory rights, including the right to appeal, can be waived as part of a plea bargaining agreement, and an informed and voluntary waiver of post-conviction relief will bar such relief under the proper circumstances. *See United States v. Melancon,* 972 F.2d 566, 567 (5th Cir. 1992); *United States v. White*, 307 F.3d 336, 339 (5th Cir. 2002), *cert. denied* 522 U.S. 882. The Court finds that Warr waived his right to seek post-conviction relief in the plea agreement, and for this reason his § 2255 petition should be denied. Out of an abundance of caution, however, the Court will address Warr's arguments.

V.   Voluntary Plea

Federal courts must uphold a guilty plea challenged in a *habeas* petition if the plea was knowing, voluntary and intelligent. *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000), *cert. denied* 532 U.S. 1067 (2001); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). The United States Supreme Court has held that by entering a plea of guilty, a defendant waives several federal constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Courts have consistently held that express articulation and waiver of each of these rights are not required; however, the record must show that the plea was voluntary. *Neyland v. Blackburn*, 785 F.2d 1283, 1287 (5th Cir.), *cert. denied* 479 U.S. 930 (1986). "A guilty plea is involuntary if it is made in ignorance of its consequences, including the length of any possible sentence." *United States v. Ammirato*, 670 F.2d 552, 555 (5th Cir. 1982) (citing *Cheely v. United States*, 535 F.2d 934, 935 (5th Cir. 1976)). "If the record shows the defendant 'understood the charge and its consequences,' this Court will uphold a guilty plea as voluntary even if the trial judge failed to explain the offense." *James*, 56

8

F.3d at 666 (quoting *Davis v. Butler*, 825 F.2d 892, 893 (5th Cir. 1987)). The "consequences" of a guilty plea in the context of sentencing "mean only that the defendant must know the maximum prison term and fine for the offense charged." *Barbee v. Ruth*, 678 F.2d 634, 635 (5th Cir. 1982), *cert. denied* 459 U.S. 867.

>The record contains the following exchange from the plea hearing:
>
>THE COURT: All right. Mr. Warr, Mr. Owen, come on around, please. You are Gregory Brent Warr, the defendant in this case?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And you are standing before the Court with your attorneys?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: If at any time during this hearing you don't understand what the Court is asking or you need to consult with your attorneys for any other reason, you just let me know; okay?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Now, the Court is informed that you wish to change your previously entered plea of not guilty to a plea of guilty to count seven of the second superseding indictment. Is that correct?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Before I can accept your plea, I must be assured that your plea is a valid plea and that you are in fact guilty. In order to do this, I must ask you a number of questions. Those questions must be answered truthfully. I will accordingly ask the clerk to swear you to tell the truth.

DEFENDANT, SWORN

>THE COURT: Do you understand now you have been sworn, and if you give untruthful answers to any questions I ask you, you could later be prosecuted for perjury for such untruthful answers?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: How old are you?
>
>THE DEFENDANT: Forty-six.

THE COURT: How much schooling did you complete?

THE DEFENDANT: Four years of college.

THE COURT: Can you read and write?

THE DEFENDANT: Yes, sir.

THE COURT: Have you taken any drugs of any type, prescription or nonprescription, or consumed any alcoholic beverages within the past 24 hours?

THE DEFENDANT: Prescription.

THE COURT: What kind?

THE DEFENDANT: Cholesterol medicine and ulcer medicine.

THE COURT: Does either of these have any effect on your ability to understand what is happening or what is going on right now?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been treated by any doctor, psychiatrist, or psychologist, or any hospital, clinic or mental institution for any mental disease or disorder?

THE DEFENDANT: No, sir.

THE COURT: In order to enter a valid plea today, you must be mentally competent.  In order to be mentally competent, you must be able to understand what is happening, including the seriousness of this hearing. You must be able mentally to consult with your attorneys and understand their advice to you. Under this definition of competence, are you competent?

THE DEFENDANT: Yes, sir.

THE COURT: You must also have been competent on the date of the charges set forth in the second superceding indictment in count seven.  For this purpose, there is a different definition of competence. For this purpose, competent means that you were mentally able on that date to distinguish right from wrong and that you were mentally able on that date to know that what is charged as a crime in count seven of the second superceding indictment was, in fact, wrong. Under this definition of competence, were you competent on the date of the charges set forth in count seven of the superceding indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Owen, Mr. Galloway, I presume, as attorneys for the defendant, you

10

have met with your client?

MR. OWEN: Yes, Your Honor, I have.

THE COURT: Do either or you question the competency of your client either today for the purpose of this guilty plea hearing or as of the date of these charges set forth in count seven of the superceding indictment?

MR. OWEN: No, Your Honor.

THE COURT: Second superceding indictment. I'm sorry. Mr. Galloway?

MR. GALLOWAY: No, sir.

THE COURT: The Court has - - does the government question the competency of the defendant?

MS. WILLIAMS: No, Your Honor.

THE COURT: The Court has observed the defendant at this point in the hearing. He appears to be alert and responsive. He has understood and answered all the questions put to him thus far. No question of his competency has been raised by the defendant, his attorneys, or the government. The Court accordingly finds the defendant is competent today for the purposes of entering a plea of guilty, and was competent on the date of the charges set forth in count seven of the second superceding indictment.
 Now, Mr. Warr, the law requires that you be adequately represented by your attorneys. Have you had ample opportunity to discuss your case with your lawyers?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the amount of time that they have spent with you and the advice they have given you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand now is the time to make any complaint about the way either one of them have handled your case up to this point?

THE DEFENDANT: No, I do understand that.

THE COURT: Do you have any complaint?

THE DEFENDANT: No.

[152-1, pp. 3-7.]

The record also contains the following exchange:

11

THE COURT: Under the Constitution and laws of the United States, you, as a criminal defendant before this Court have certain rights. I'm sure your attorneys have been over those rights with you, but I'm going to go over them with you so I am sure you know and understand what they are, because when I finish, I'm going to ask you whether you waive those rights. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you are entitled to a trial by jury if you want one, and even though you have stated you wish to enter a plea of guilty today, you can change your mind right now and request a jury trial and one would be given to you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if you were to choose to be tried by a jury, all 12 jurors would have to vote to find you guilty before you could be convicted?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at the trial you would be presumed to be innocent and the government would be required to prove you guilty beyond a reasonable doubt, and you would not have to prove your innocence?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at the trial the government would be required to present its witnesses in open court, and in your presence, and your lawyers, on your behalf, would have a right to cross-examine those witnesses?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at the trial, even though you would not have to prove your innocence, you could offer proof on your own behalf, if you so chose, and the subpoena power of this Court would be made available to you to summons into court any witnesses you care to call?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand at the trial you would have the right not to testify, and the government couldn't call you to the witness stand and make you claim this right, nor if you chose not to testify could the government make any suggestion or inference of guilt to the jury because of your failure to testify?

THE DEFENDANT: Yes, sir.

THE COURT: You understand if you went to trial you could testify if you wanted to, and you would not have to testify if you didn't want to?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty and I accept your plea of guilty, do you understand you are waiving or giving up your right to trial, as well as these other valuable rights I have been explaining to you?

THE DEFENDANT: Yes, sir.

THE COURT: Before I will accept your plea of guilty, I must be convinced you are in fact guilty. I'm going to require you to admit your guilt to me. Do you understand by doing this you are waiving or giving up your right to remain silent, that is, your right not to testify against yourself or your right against self-incrimination?

THE DEFENDANT: Yes, sir.

THE COURT: Do you still want to waive your right to a trial, your right to remain silent, and do you still want to plead guilty to count seven of the second superceding indictment?

THE DEFENDANT: Yes, sir.

THE COURT: It is my duty to explain to you the nature of the charges contained in count seven of the second superceding indictment. Have you received a copy of this indictment, the second superceding indictment?

THE DEFENDANT: Yes, sir.

THE COURT: Have you gone over the charges made against you and any possible defenses you have with your attorneys?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to go over it with you because it is relatively short, and I want to be certain there is no doubt in your mind what you are offering to plead guilty to. Count seven says, "On or about September the 14th, 2005, through on or about November 30th, 2005, in Harrison County, in the Southern Division of the Southern District of Mississippi and elsewhere, that you, aided and abetted by others, known and unknown to the Grand Jury, did steal, purloin, and knowingly convert to your own use a sum greater than a thousand dollars in funds belonging to the United States of America by filing a claim for Federal Emergency Management Agency disaster assistance benefits, and receiving such disaster assistance benefits to which you knew you were not entitled, in violation of Section 641 and 2 of Title 18, United States Code." Is there any doubt in your mind what you are offering to plead guilty to?

THE DEFENDANT: No, sir.

THE COURT: Do you understand now that if you plead guilty and I accept your plea

13

of guilty, I can sentence you to any sentence up to and including not more than ten years in the federal penitentiary and/or a $250,000 fine? If I give you a period of incarceration, I can follow that with not more than three years of supervised release. If during any of the period of supervision you violate any of the terms of supervision, I can bring you back into court and send you back to the federal penitentiary to serve out the rest of your time. And I also have to make a special assessment of a hundred dollars. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody forced you or threatened you or in any other way coerced you to come here today for the purposes of entering a plea of guilty?

THE DEFENDANT: No, sir.

THE COURT: Are you here freely and voluntarily and of your own accord?

THE DEFENDANT: Yes, sir.

THE COURT: I understand that you have entered into an agreement with the government, as evidenced by a memorandum of understanding. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to ask the Assistant United States Attorney to relate to the Court the substance of that memo.

MS. WILLIAMS: Your Honor, the government has entered into a memorandum with the defendant that on the defendant's plea of guilty, we will recommend that the Court accept the same; further, that we will recommend that the Court impose a sentence of three years or probation, with a special condition of 40 hours of community service at the direction of the United States Probation Office, that the defendant pay restitution of $9,558, that is restitution to the Federal Emergency Management Agency, that the defendant also pay a forfeiture judgment in the amount of $9,558. The defendant is, through this fast track plea, waiving his right to a presentence investigation and report. In addition to waiving the constitutional rights that the Court has gone over with the defendant, the defendant is also waiving his right to appeal or contest either the conviction or the sentence in this matter, or to seek any attorney fees or costs under the Hyde amendment, or to file any actions under the Freedom of Information Act.

THE COURT: All right. Do you have that memorandum of understanding before you, Mr. Warr?

MR. OWEN: If it please the Court, we have seen the essence of it. It had to be changed a couple of times just for some non-substantive errors, and I don't have a copy. She had the original.

MS. WILLIAMS: And we have provided that to the clerk already, Your Honor.

MR. OWEN: But we have been over the plea agreement.

THE COURT: Have you been over the corrected document?

THE DEFENDANT: Yes, sir. I have reviewed and signed it. I don't have it before me now.

THE COURT: Have you been over it with your attorneys?

THE DEFENDANT: Yes, sir.

MR. OWEN: There is one other thing, too, if I may add. This is a 20-count indictment. The other 19 counts will be dismissed.

MS. WILLIAMS: That is correct.

THE COURT: That is correct. Do you need to say anything to him?

MR. OWEN: No, Judge. He was asking me about Ms. Warr, the dismissal of her 20 counts, but that is not really part of his plea agreement. The discussion is wrapped into it, but its not part of his plea agreement.

THE COURT: You have read the document?

THE DEFENDANT: Yes.

THE COURT: Have you signed it?

THE DEFENDANT: Yes.

THE COURT: Has anybody made any promise to you or side agreement with you that is not contained in that document?

THE DEFENDANT: No, sir.

THE COURT: Does that document contain the complete agreement reached between you and the government in this case?

THE DEFENDANT: Yes.

THE COURT: Mr. Owen and Mr. Galloway, you both agree with that the document contains the complete agreement reached between the government and your client in this case?

MR. OWEN: Yes, Your Honor.

15

MR. GALLOWAY: Yes, sir.

THE COURT: Mr. Warr, you understand that I don't have to follow any government recommendation, and I can sentence you to any sentence up to and including the maximum I have already explained to you, and you have waived your right to appeal it or contest it in a post-conviction setting; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Let it be marked. Now, I am going to determine the factual basis for your plea. I am going to ask the government to relate to the Court the basic facts that the government would expect to have proven had your case gone to trial. I want you to listen carefully because afterwards I will ask you if you disagree with anything she just said.

MS. WILLIAMS: Your Honor, if this matter were to proceed to trial on the second superceding indictment, the government would prove that within the Southern District of Mississippi, that on September 14, 2005, the codefendant, Laura Warr, registered by phone with the Federal Emergency Management Agency for Katrina disaster assistance, falsely claiming that she, her husband, and their children were living at the residence at 1814 Beach Drive, in Gulfport, Mississippi, when the proof would show that they were not in fact living at 1814 Beach Drive. On November 26, 2005, the defendant, Gregory Brent Warr, met with a FEMA inspector at 1814 Beach Drive and represented that at the time of the storm the house was, in fact, occupied by the Warr family at the time of Katrina.

As a result of these actions, the Warrs received three payments from FEMA: $2,000 on September 15th of '05; $2,358 on October 18th, 2005; and $5,200 on November 29th, 2005, for a total of $9,558, to which they were not entitled.

THE COURT: All right. Mr. Warr, do you agree that what the government's attorney has just related to the Court is in fact what happened?

THE DEFENDANT: Yes, Sir.

THE COURT: Do you disagree with anything she said?

THE DEFENDANT: No, sir.

THE COURT: Are you, in fact, guilty of count seven of the second superceding indictment?

THE DEFENDANT: Yes.

[152-1, pp. 7-16.]

The Court also asked on the record the following of Warr and his attorneys:

16

>THE COURT: Is there anything you want to say on your own behalf?
>
>THE DEFENDANT: No sir.
>
>THE COURT: Anything, Mr. Owen or Mr. Galloway, on your client's behalf?
>
>MR. OWEN: No, Your Honor.
>
>MR. GALLOWAY: No, sir.
>
>THE COURT: Anything the government has to say?
>
>MS. WILLIAMS: No, Your Honor.
>
>THE COURT: Mr. Warr, do you know of any reason why the Court shouldn't impose a sentence on you at this time?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Mr. Owen?
>
>MR. OWEN: No, Your Honor.
>
>THE COURT: Mr. Galloway?
>
>MR. GALLOWAY: No, sir.
>
>THE COURT: Ms. Williams?
>
>MS. WILLIAMS: No, Your Honor.

[152-1, p. 18.]

The transcript indicates that the court informed Warr of the mandatory maximum sentence and fine which could be imposed for the offense to which Warr pleaded guilty. Warr's plea colloquy establishes to the Court that Warr's plea meets the constitutional requirements that the plea be knowing, voluntary and intelligent. *United States v. Salado*, 339 F.3d 285, 293 (5th Cir. 2003). The Court further finds that there are no grounds to grant *habeas* relief based on any claim that may arise that Warr's claim that his plea was not knowingly or voluntarily entered, or that he did not fully understand the consequences or parameters of the Plea Agreement,

including the sentence. *Blackledge v. Allison,* 431 U.S. 63, 73 (1977). In addition, because the plea was informed and voluntary, the Court finds that the waiver provision contained in the plea agreement is valid. The waiver bars any claim for post-conviction relief raised by Warr in his petition. Nevertheless, the Court will further consider his claims in the event the waiver is found not enforceable.

VI.  Allegations of *Brady/Giglio* Violations

"[T]he Constitution does not require the [United States] to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz,* 536 U.S. 622, 633 (2002). Warr's guilty plea precludes him from claiming that the United States' alleged failure to disclose the summons was a *Brady* violation, or from claiming that the use of the summons was unconstitutional. *See United States v. Conroy,* 567 F.3d 174, 179 (5th Cir. 2009) (holding that a *Brady* violation is waived by guilty plea); *see also United States v. Cothran,* 302 F.3d 279, 285–6 (5th Cir. 2002) (noting that a Fourth Amendment claim is waived by guilty plea).

As discussed above, the Court concludes that Warr's guilty plea was knowing and voluntary. The inquiry in any challenge to a guilty plea is whether the plea was entered voluntarily, and whether the related "waiver of [the defendant's] right to receive from prosecutors exculpatory . . . material" was made " 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.' " *Ruiz,* 536 U.S. at 628-29 (quoting *Brady,* 397 U.S. at 748).

In summary, Warr has not shown that he could not have raised these grounds for relief on appeal, nor has he shown that he has overcome the procedural bar by demonstrating the necessary cause and prejudice. Warr has not asserted that he is actually innocent of the violation as charged in Count Seven of the second superceding indictment. Consequently, he has not

shown that refusing to consider these claims will result in a fundamental miscarriage of justice. The Court concludes that Warr's *habeas* petition brought under 28 § 2255 petition should be denied.

No hearing is necessary on a § 2255 motion "if the issues raised have been previously decided on direct appeal, contain no constitutional violation, or lack support in the record." *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981), *cert. denied*, 456 U.S. 934 (1982). Warr's claim fails because it is wholly speculative and conclusional. Accordingly, the Court finds no grounds for granting *habeas* relief on Warr's claims in this case.

In light of these findings, the Court further concludes that the United States' motion to dismiss and enforce plea agreement should be denied as moot.

## Certificate of Appealability

The Court reviewed the merits of Warr's claims and found them to lack merit. An appeal may not be taken to the court of appeals from a final order in a *habeas corpus* proceeding "unless a circuit justice or judge issues a certificate of appealability" [COA]. 28 U.S.C. § 2253(c)(1)(A); *see Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). A COA "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003).

To warrant a grant of a COA as to claims when "a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Brown v. Thaler*, 684 F.3d 482, 487 (5th Cir. 2012). The Court concludes that reasonable jurists could not debate the denial of Warr's § 2255 motion on

any grounds nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El,* 537 U.S. at 327. Accordingly, the Court finds that Warr is not entitled to a COA. It is therefore,

ORDERED that Warr's motions to vacate [148, 149] the previously imposed sentence be, and are hereby, denied. It is further,

ORDERED that the United States' Motion to Dismiss [152] be, and is hereby, denied as moot. It is further,

ORDERED that Warr is not entitled to a COA. It is further,

ORDERED that this cause be dismissed with prejudice.

ORDERED this the 5th day of December, 2013.

*Walter J. Gex* III
UNITED STATES SENIOR DISTRICT JUDGE